```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
```

**JACKSON DIVISION**

**PATSY G. TOLER**                                              **PLAINTIFF**

**VS.**                                 **CIVIL ACTION NO. 3:05cv167-WHB-JCS**

**LITTON LOAN SERVICING, LP, U.S. BANK**
**NATIONAL ASSOCIATION, CREDIT-BASED**
**ASSET SERVICING AND SECURITIZATION, LLC,**
**D/B/A C-BASS MORTGAGE, FINANCIAL ASSET**
**SECURITIES CORP., NATIONAL CITY HOME LOAN**
**SERVICES, INC., FORMERLY KNOWN AS ALTEGRA**
**CREDIT COMPANY, JOHN DOES 1-5, AND**
**JOHN DOE CORPORATIONS 1-5**                                  **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

This cause is before the Court on:

1) the Motion for Partial Summary Judgment of Litton Loan Servicing LP (hereinafter "Litton") and Credit-Based Asset Servicing and Securitization, LLC (hereinafter "C-Bass"); and

2) the Motion for Summary Judgment of National City Home Loan Services, Inc., Formerly Known as Altegra Credit Company (hereinafter "Altegra").

Having considered the Motions, Responses, Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds that:

1) the Motion for Partial Summary Judgment of Litton and C-Bass is well taken in part and should be granted in part, and the

>Motion is not well taken in part and should be denied in part; and

2) the Motion for Summary Judgment of Altegra is well taken and should be granted.

### I. Factual Background and Procedural History

This case arises out of a residential loan transaction gone amiss. In November of 1997, Plaintiff Patsy G. Toler purchased a house located at 204 Glen Cove Road in Brandon, Mississippi. To purchase the house, Toler borrowed $127,500.00 from Altegra, at an initial interest rate of 11.19%. Balloon Note, attached to Complaint as Exhibit "B." Her monthly payments were $1,232.55. Id. Effective May of 1998, the rate was reduced to 9.54%, resulting in monthly payments of $1,075.81. Loan Modification, attached to Complaint as Exhibit "C."

At some time in 2001, Plaintiff became delinquent on her loan payments. Including applicable attorney's fees, the total arrearage was $10,191.29. Forbearance Agreement, attached to Complaint as Exhibit "D." To avoid foreclosure proceedings, Plaintiff and Altegra negotiated an agreement whereby Plaintiff was to make a single payment of $2,554.00 on November 12, 2001, followed by monthly payments of $1,704.91 beginning December 15, 2001, and ending November 15, 2002. Id. Beginning December 15, 2002, Plaintiff's monthly payments were to resume at $1,075.81. Id. On November 9, 2001, Plaintiff made the initial payment of

2,554.00. Official Check, attached to Complaint as part of composite Exhibit "E."

On November 13, 2001, ownership of the subject Note and accompanying Deed of Trust was transferred from Altegra to C-Bass. Assignment of Mortgage,[1] attached to Complaint as part of composite Exhibit "E."  Also, effective December 1, 2001, servicing of the loan was transferred from Altegra to Litton. Letter from Altegra to Toler dated November 14, 2001, attached to Complaint as part of composite Exhibit "E."  This transfer of loan servicing was confirmed by a letter from Litton to Plaintiff which stated in part "[p]lease be assured that the transfer of servicing for your loan does not affect the terms of your original mortgage instrument." Letter from Litton to Toler dated December 14, 2001, attached to Complaint as Exhibit "G."

Problems arose at this point.  Although Plaintiff was complying with the terms of the Forbearance Agreement, on January 14, 2002, Litton advised Plaintiff that she was in default on the subject loan. Letter from Litton to Toler dated January 14, 2002, attached to Complaint as part of composite Exhibit "J."  The letter goes on to state "[t]o cure this default, you must pay all amounts that are due and owing under the terms of your Note and Deed of Trust / Mortgage.  As of the date of this letter, the total amount

---

[1]Although this document is titled "Assignment of Mortgage," the Court reasonably assumes that this was intended to be, and actually was an assignment of the subject Note and Deed of Trust.

necessary to bring the loan current is $15,057.10." Id.  Two days later, Litton sent Plaintiff a conflicting letter that states "[a]s of the date of this letter, the total amount necessary to bring the loan current is $13,352.19.  Letter from Litton to Toler dated January 16, 2002, attached to Complaint as part of composite Exhibit "J."

The difference in the $15,057.10 and the $13,352.19 figures is $1,704.91, the amount of the required monthly payment under the Forbearance Agreement.  The Court assumes that a payment was credited between the time the first and second letters were written by Litton to Plaintiff.  Although this assumption is reasonable on the one hand, it seems a bit odd on the other hand because in a letter from Litton to Plaintiff dated January 3, 2002, Litton refused to accept a payment in the amount of $1,704.91. Letter from Litton to Toler dated January 3, 2002, attached to Complaint as Exhibit "I."  The letter states "[t]hese funds are not sufficient to pay the full amount due on your account at this time." Id.  In any event, neither of the figures quoted by Litton comport with the Forbearance Agreement, which states that Plaintiff was in arrears in the amount of $10,191.29.  Also, the actions of Litton did not comport with the provisions of the Forbearance Agreement which allowed for Plaintiff to make monthly payments without a lump-sum accelerated payment for the total arrearage under the loan.

Plaintiff hired attorney Vann F. Leonard to help resolve the issue with Litton. Litton informed Leonard that the increased amount of indebtedness resulted from "the negative escrow balance that was carried forward from the prior servicing agent." Letter from Litton to Leonard attached to Complaint as Exhibit "M." Interestingly, all parties appear to agree that this loan was set up as a "non-escrow" loan.[2] In fact, in a letter from Litton to Plaintiff dated August 7, 2003, Litton states "[o]ur records indicate that you have a non-escrow account, and therefore the payment of your property taxes is your responsibility." Letter from Litton to Toler dated August 7, 2003, attached to Complaint as Exhibit "U."

The problems to this point are two-fold. First, Litton appeared to be requiring the total arrearage to be paid in one lump-sum payment. Second, Litton appeared to be establishing an escrow account for taxes and/or insurance when the original loan contract required no such account. Based on evidence presented by the parties, the establishment of an escrow account was probably to reimburse Litton for payment of allegedly delinquent taxes. See Letter from Litton to Toler dated August 7, 2003, attached to Complaint as Exhibit "U" (stating "upon notification of the

---

[2]Under a non-escrow real estate loan transaction, the borrower, Toler in this case, is responsible for payment of taxes and insurance on the property, rather than the lender through an escrow account.

5

[property tax] delinquency, we advanced funds to protect our interest in the property."). The bandying between Litton and Toler continued with regard to the proper amount of the monthly loan payment and the arrearage on the loan. To escape her problems with Litton, Plaintiff attempted to refinance the loan through another lender, but her application was rejected because of the reportedly delinquent state of the existing loan.

The situation came to a head on September 4, 2003, when Plaintiff was informed that foreclosure proceedings on her house were about to begin. Letter from attorney Lem Adams to Toler dated September 4, 2003, attached to Complaint as Exhibit "W."  To avoid foreclosure, Plaintiff filed a Voluntary Petition in the United States Bankruptcy Court for the Southern District of Mississippi. Voluntary Petition, attached to Complaint as part of composite Exhibit "X."  The Petition was filed under Chapter 13 of the Bankruptcy Code. Id.  The bankruptcy case was dismissed because, *inter alia*, "the correct mortgage arrears was not scheduled...." Trustee's Objection to Confirmation, attached to Complaint as part of composite Exhibit "Y."  Plaintiff alleges that the Trustee's finding that "the correct mortgage arrears was not scheduled" was based on erroneous representations by Litton of both the arrearage amount and the interest rate.  This issue was not resolved, and the Notice of Dismissal, which finally dismissed Plaintiff's bankruptcy

proceeding, was entered on June 24, 2004. Notice of Dismissal of Case, attached to Complaint as Exhibit "Z."

Aggrieved by the above described events, Plaintiff filed the subject suit in the Circuit Court of Rankin County, Mississippi, on February 2, 2005.  The claims in the Complaint are:

- count 1: Failure to disclose the charging of improper fees, finance charges and/or penalties.
- count 2: Intentional, reckless, wanton and/or negligent misrepresentation of fees, finance charges and/or penalties.
- count 3: Intentional, reckless, wanton and/or negligent misrepresentation that payments would be "promptly"[3] applied to Plaintiff's account.
- count 4: Intentional, reckless, wanton and/or negligent suppression of the correct amounts due from Plaintiff.
- count 5: Breach of contract.
- count 6: Negligent handling of Plaintiff's loan.
- count 7: Wanton handling of Plaintiff's loan.
- count 8: Infliction of emotional distress.
- count 9: Conversion.

---

[3]The significance of the word "promptly" stated in count three becomes apparent below.

>     count 10: The Court is unsure of the exact nature of count ten. Plaintiff states "[t]he Defendants owe the Plaintiff for monies paid by the Plaintiff to the Defendants by mistake." Complaint, p. 21, ¶ 84. This appears to be an unjust enrichment claim.
>
>     count 11: Defamation regarding Plaintiff's credit history and financial condition.
>
>     count 12: Conspiracy.

Plaintiff seeks an unspecified amount of both compensatory and punitive damages. Plaintiff also seeks cancellation of the Note and Deed of Trust.

The case was removed to this Court on March 11, 2005, on the jurisdictional basis of diversity of citizenship, 28 U.S.C. § 1332. All parties and the Court agree that the requirements for exercising diversity of citizenship jurisdiction are met in this case. Both the Motion for Partial Summary Judgment of Litton and C-Bass, and the Motion for Summary Judgment of Altegra were filed in this Court on April 3, 2006.[4] Both Motions are now ripe for consideration by the Court.

---

[4] Neither Defendant U.S. Bank National Association nor Defendant Financial Asset Securities Corporation filed Motions for Summary Judgment. After reviewing both the Complaint and the pleadings currently before the Court, the Court is unsure of the role of these two Defendants in this case.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point

to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Analysis

**A.   Motion for Partial Summary Judgment of Litton and C-Bass**[5]

Defendants Litton and C-Bass seek summary dismissal of all of Plaintiff's claims against them, with the exception of count five, breach of contract. The claims are considered under the following subheadings.

---

[5] Unless otherwise stated, references to "Defendants" in this section of the Opinion (section III.A.) include *only* Litton and C-Bass.

   **1.   count 1:  failure to disclose the charging of improper fees, finance charges and/or penalties**

In count one of the Complaint, Plaintiff contends that she was charged improper fees, finance charges and/or penalties on her loan.  At Plaintiff's deposition, when asked to identify the improper fees, finance charges and penalties charged by Defendants, she could not do so. Plaintiff's deposition transcript, pp. 7-8, attached to Motion for Partial Summary Judgment as Exhibit "F."  In response to Defendants' argument that this claim should be dismissed based on Plaintiff's deposition testimony, Plaintiff contends that the improper fees, charges and penalties exist, but that they cannot be specifically identified because of "the convoluted and confusing accounting procedures practiced by Litton." Memorandum in Response to Motion for Partial Summary Judgment, p. 10.

Discovery is complete, and this case is in the summary judgment phase.  The time for speculation is over.  Since Plaintiff cannot identify the alleged improper fees, charges and penalties which form the basis of count one, there is no genuine issue of material fact and summary judgment must be granted as to this count.

   **2.   count 2: intentional, reckless, wanton and/or negligent misrepresentation of fees, finance charges and/or penalties**

Through count two, Plaintiff contends that Defendants intentionally, recklessly, wantonly and/or negligently

misrepresented fees, finance charges and/or penalties related to her loan. Again, Defendants claim that in her deposition, Plaintiff could identify no such misrepresentations. However, Plaintiff rebuts this allegation by pointing to the fact that she was threatened with foreclosure during the forbearance period. The evidence supports Plaintiff's contention, and the Court construes this threat as a potential "penalty" in the context of count two. The Court therefore finds there is a genuine issue of material fact as to count two and that summary judgment on count two must be denied.

>   **3.   count 3:   intentional, reckless, wanton and/or negligent misrepresentation that payments would be "promptly" applied to Plaintiff's account**

In count three, Plaintiff contends that misrepresentations were made regarding "prompt" application of her payments to her account balance. In her deposition, Plaintiff stated the payments "were all *promptly* applied. They just weren't applied *correctly*." Plaintiff's deposition transcript, pp. 7-8, attached to Motion for Partial Summary Judgment as Exhibit "F" (emphasis added). Based on this admission, Defendants contend that this claim must be dismissed.

In Response, Plaintiff argues that "Count Three of the Complaint should have read 'properly' [applied] instead of 'promptly' [applied]." Memorandum in Response to Motion for Partial Summary Judgment, p. 12. This argument is not well taken.

Plaintiff has not moved to amend her Complaint, and the time limit for such relief has expired, given the fact that discovery is complete and the trial of this case is set in June.  There is no genuine issue of material fact as to count three and summary Judgment must be granted on this count.

    **4.    count 4:  intentional, reckless, wanton and/or negligent suppression of the correct amounts due from Plaintiff**

Under count four, Plaintiff claims that Defendants suppressed information pertaining to the correct loan payment amounts due from her.  A review of evidence presented to the Court indicates that a genuine issue of material fact is presented by this claim. Accordingly, summary judgment on count four should be denied.[6]

    **5.    count 6: negligent handling of Plaintiff's loan
and
count 7: wanton handling of Plaintiff's loan**

Counts six and seven set forth claims for negligent and wanton handling of Plaintiff's loan.  The Court finds that under the facts of this case, these claims should survive summary judgment. However, the Court notes that in her Response, Plaintiff makes reference to the Real Estate Settlement Procedures Act in support of this claim. Memorandum in Response to Motion for Partial Summary Judgment, pp. 15-16.  None of the claims in Plaintiff's Complaint makes reference to the Real Estate Settlement Procedures Act.

---

[6]This ruling does not preclude Defendants from again asserting the voluntary payments doctrine at trial.  The Court does not have enough evidence before it to make a definitive ruling on the voluntary payments defense at this phase of the litigation.

Therefore, Plaintiff will not be allowed to assert such a claim at trial.

**6.     count 8: infliction of emotional distress**

In the subject Motion, Defendants contend that count eight states a claim for "intentional" infliction of emotional distress, and that said claim should be dismissed. In response, Plaintiff states "Toler does have a claim for negligent infliction of emotional distress. However, in her Complaint, Toler alleged a claim for intentional infliction of emotional distress. Toler concedes the fact she has no claim for intentional infliction of emotional distress." Memorandum in Response to Motion for Partial Summary Judgment, p. 18.

As stated above in section III.A.3. of this Opinion, the time for amendments to the Complaint has passed. Therefore, the newly asserted "negligent" infliction of emotional distress claim must be dismissed. Further, Plaintiff admits that she has no claim for "intentional" infliction of emotional distress. Therefore, there is no genuine of material fact as to count eight and summary judgment should be granted as to that count.

The negligent infliction of emotional distress claim should be dismissed on the merits as well. To succeed under a negligent infliction of emotional distress claim, a plaintiff must prove "some sort of physical manifestation of injury or demonstrable physical harm." <u>Am. Bankers' Ins. Co. of Florida v. Wells</u>, 819

So.2d 1196, 1209 (Miss. 2001).  Plaintiff in this case has come forth with no evidence of physical harm.  For this alternative reason, count eight must be dismissed.

    **7.**    **count 9: conversion**
          **and**
          **count 10: unjust enrichment**

The Court has insufficient evidence before it to make dispositive determinations as to count nine, conversion, and count ten, unjust enrichment.  Summary Judgment as to these claims must be denied.

    **8.**    **count 11: defamation regarding Plaintiff's credit history and financial condition**

Count eleven states a claim of defamation.  Defamation claims are governed by a one year statute of limitations. Miss. Code Ann. § 15-1-35.  The only alleged defamatory statement that was potentially within the one year limitations period was information submitted to the bankruptcy court with regard to Plaintiff's Voluntary Petition in Bankruptcy.

Under <u>Ladner v. Arrington</u>, 374 So.2d 831, 833 (Miss. 1979), "defamatory matter set forth in a judicial proceeding is absolutely privileged and no action will lie for libel and slander based on such defamatory matter is the matter is relevant or pertinent to the issues involved in the case." <u>See also</u>, <u>Submersible Sys., Inc. v. Perforadora Central, S.A.</u>, No.Civ.A. 1:98CV251GR, 1999 WL 33495526 at *2 (S.D. Miss. May 28, 1999)(citing <u>Ladner</u>).  Based on the holding in <u>Ladner</u>, the alleged defamatory statement(s) is this

case were privileged statements.  Accordingly, Plaintiff's defamation claim must be dismissed.

### 9.   count 12: conspiracy

Count twelve, the final count in Plaintiff's Complaint, alleges conspiracy.  Under Mississippi law, "[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." <u>Gallagher Bassett Servs., Inc. v. Jeffcoat</u>, 887 So.2d 777, 786 (Miss. 2004)(citation omitted).

When asked to identify acts supporting her conspiracy claim during her deposition, Plaintiff stated "I can't identify because I don't know what they were trying to do." Plaintiff's deposition transcript, p. 46, attached to Motion for Partial Summary Judgment as Exhibit "F."  Plaintiff attempted to clarify her conspiracy claim by stating that defendants created confusion with regard to the true owner of her loan. <u>Id.</u> at pp. 44-46.  Assuming that this allegation is true, it does not support a claim of civil conspiracy as defined in <u>Jeffcoat</u>.  The Court finds that there is no genuine issue of material fact as to count twelve and that count twelve should be dismissed.

### 10.  conclusion - Motion for Partial Summary Judgment of Litton and C-Bass

Based on the holdings presented above, the following claims against Litton and C-Bass should be dismissed at this summary judgment stage: count one, count three, count eight, count eleven

and count twelve.  The following claims against Litton and C-Bass will proceed to trial: count two, counts four through seven, count nine and count ten.

**B.    Motion for Summary Judgment of Altegra**

The same twelve claims are asserted against Altegra that are asserted against Litton and C-Bass.  However, the facts supporting the claims against Altegra differ.  Altegra argues that all claims against it are barred by the applicable statutes of limitations. It is undisputed that the various statutes of limitations that apply to Plaintiff's claims in this case range from one year to three years.  It is also undisputed that loan ownership was transferred from Altegra to C-Bass on November 13, 2001, and loan servicing responsibilities were transferred from Altegra to Litton on December 1, 2001.  Altegra clearly relinquished all rights and responsibilities to the subject loan no later than December 1, 2001.  Plaintiff's Complaint was filed over three years after that date, on February 2, 2005.

Plaintiff concedes that her Complaint was filed over three years after Altegra transferred ownership and servicing responsibilities of the subject loan to C-Bass and Litton. However, Plaintiff asserts the her claims are protected by the fraudulent concealment doctrine embodied in § 15-1-67 of the Mississippi Code.  Section 15-1-67 states:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the

17

>knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

In order to prove fraudulent concealment, there is "a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on [the part of the plaintiff] to discover it." <u>Stephens v. Equitable Life Assurance Soc'y of the United States</u>, 850 So.2d 78, 84 (Miss. 2003).

With regard to the "affirmative act" requirement for fraudulent concealment, Plaintiff alleges that Altegra concealed the true owner of the subject loan. Even if true, the Court is not sure how this fact could contribute to the success of Plaintiff's claims. The Court will nevertheless examine Plaintiff's contention.

Plaintiff contends that she was unaware that <u>ownership</u> of the subject loan was transferred to C-Bass because Altegra only informed her that "[e]ffective December 1, 2001, the <u>servicing</u> of your mortgage loan will be transferred to Litton Loan Servicing, LP." Letter from Altegra to Toler dated November 14, 2001, attached to Complaint as part of composite Exhibit "E" (emphasis added). The Court assumes that Plaintiff believes the "affirmative act" requirement is met because Altegra informed her that the <u>servicing</u> of the loan was transferred to Litton, and failed to inform her

18

that the *ownership* of the loan was transferred to C-Bass. Plaintiff's belief is misguided. This statement does not form the basis for an "affirmative act" of concealment.[7]

Assuming *arguendo* that the "affirmative act" requirement is met, the Court finds that the second requirement for fraudulent concealment is not met; i.e., Plaintiff exercised no "due diligence" to discover the true owner of the loan. The instrument which transferred ownership of the loan is a matter of public record. The instrument titled "Assignment of Mortgage" which pertains to the subject loan is recorded in the office of the Chancery Clerk of Rankin County, Mississippi in book 1801, page 288. The Assignment of Mortgage clearly states that ownership rights to the subject loan were transferred from Altegra to C-Bass effective November 13, 2001. A simple record search would have revealed this information. Accordingly, the Court finds that the "due diligence" requirement for Plaintiff's assertion of fraudulent concealment fails.

Based on the above holdings, the Court finds that all claims against Defendant Altegra are barred by the applicable statutes of limitations. The Motion for Summary Judgment of Altegra must therefore be granted.

---

[7]To the extent that Plaintiff is relying on the provisions of the Real Estate Settlement Procedures Act in arguing that the "affirmative act" requirement is met, that argument is rejected under the same rationale stated above in section III.A.5. of this Opinion.

### V. Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that the Motion for Partial Summary Judgment of Litton Loan Servicing LP and Credit-Based Asset Servicing and Securitization, LLC (docket entry no. 48) is hereby granted in part and is hereby denied in part, in accordance with the summary presented in section III.A.10. of this Opinion.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of National City Home Loan Services, Inc., Formerly Known as Altegra Credit Company (docket entry no. 46) is hereby granted.  Defendant National City Home Loan Services, Inc., Formerly Known as Altegra Credit Company is hereby dismissed from this case with prejudice.

SO ORDERED this the 9th day of May, 2006.

s/ William H. Barbour, Jr.<br>UNITED STATES DISTRICT JUDGE

tct